No. 11,939.

SWAILS ET AL., EXECUTORS, *v.* SWAILS ET AL.

WILLS.—*Revocation.—Conveyance.—Statute Construed.*—By a will, eighty-eight acres of land, of which the testator was seized at the date of the will, was devised to his son J., and thirty-six acres to his grandson N. Subsequently he conveyed by deed to J. for life, remainder in fee to J.'s children, sixty acres of the same land, and to N. forty acres, leaving twenty-four acres, being part of the thirty-six acres devised to N., undisposed of by deed.

*Held*, that these deeds did not, under section 2566, R. S. 1881, revoke the devise of the twenty-four acres to N.

SAME.—*Ademption.*—The doctrine of ademption does not apply to specific devises of real estate, nor where the devisor does not stand *in loco parentis.*

From the Decatur Circuit Court.

*J. K. Ewing* and *C. Ewing*, for appellants.

*W. A. Moore* and *J. Marshall*, for appellees.

ELLIOTT, J.—Francis M. and William H. Swails are the executors of the will of Nathan P. Swails, deceased, and filed the petition, upon which these proceedings are based, praying for the sale of the lands of which the testator died seized. Nathan G. Swails is a grandson and devisee of Nathan P. Swails, and claims the land under the devise contained in the will. At the time the will was executed the testator owned one hundred and twenty-four acres of land, and in his will disposed of all of it, devising to John Swails and his heirs eighty-eight acres and to Nathan G. Swails thirty-six acres. After the execution of the will Nathan P. Swails, the testator, executed two deeds; one of them conveyed to John Swails for life and his children in fee sixty acres off the north side of the tract, and the other conveyed to Nathan G. Swails forty acres immediately south of the parcel conveyed to John, leaving the twenty-four acres described in the will not conveyed. The contest is as to the ownership of the twenty-four acres not conveyed.

Counsel agree that one of the controlling questions in the case is this: Did the conveyances executed by the testator subsequent to the execution of the will work a revocation? The question is controlled by our statute, which reads thus:

"A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property previously devised by him shall be altered but not wholly divested, shall not be deemed a revocation of such devise, but the same shall pass to the devisee or legatee the actual estate or interest of the testator which would otherwise descend to his heirs, unless such devise shall be otherwise revoked, or unless, in the instrument by which such alteration is made, the intention is declared that it shall operate as a revocation of such previous devise; but if, in any case, the provisions of the instrument by which such alteration is made are wholly inconsistent with the terms and nature of such previous devise, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed or such contingency do not happen." R. S. 1881, sec. 2566.

The old law was that the testator must be seized of the land at the time of making the will, and that the seizure must continue until the time of his death. An alienation of the land, by force of this rule, operated as a revocation of the will. 1 Jarman Wills (5 Am. ed.), 308. During the reign of the present Queen of England, the English law has been essentially changed. 1 Victoria, chapter 26, section 23. But as we have a statute governing the subject, we can not look elsewhere except for assistance in construing the legislative enactment. The principal assistance which we can secure is afforded by the fact that the Legislature deemed the rule of the common law an evil, and enacted the statute to remedy it. In construing an act of the Legislature, it is always proper to consider the evil which it was framed to destroy, as well as the object which it was intended to accomplish. *Hedrick* v. *Kramer*, 43 Ind. 362; *Bell* v. *Davis*, 75 Ind. 314. The evil which our statute is intended to prevent is the injustice worked by the old rule, and the object intended to be accomplished is to prevent a partial alienation from destroying the devise except in cases where the purpose of

the testator to give that effect to the alienation is manifested, or where the provision by which the alienation is made is inconsistent with the terms or nature of the devise. It is clear that it is not every alteration in the estate of the testator in the property, nor every partial alienation, that will revoke the devise. It is not enough to show a change in the testator's estate, or to show a partial alienation, and the common law authorities which counsel cite can not prevail where there is such a statute as ours.

There is nothing in the deeds showing an intention to revoke or modify the will, and it can not be said that there is anything in the provisions of the instruments making the alteration in the estate of the testator, which is inconsistent " with the terms and nature of the devise." Nor is there anything in the instruments which wholly divests the title of the devisor. As there are no express words indicating an intention to revoke the will, and as there is no inconsistency between the terms and nature of the devise, and the deeds making the partial alienation, the devisee took the estate in the land not conveyed, which, but for the devise, would have passed by due course of descent to the heirs of the devisor, unless there is something in the nature of the transaction in which the deeds were executed which produces an inconsistency between the deeds and the will.

We are unable to perceive any inconsistency in the acts of the testator. It may well be that he elected to vest an indefeasible estate in part of the land in his grandson, and also devised to him the land described in the will, or so much of it as remained subject to the will when it became operative. An estate vested by a present conveyance is essentially different from a provision made by an ambulatory instrument like a will. The deeds do not purport to operate upon the twenty-four acres described in the devise; that is not disposed of, and the just inference is that the testator meant to hold that part of his land, in order that at his death his will might

carry it to his grandson. Leaving the land described in the devise undisposed of by the conveyances, leads to the inference that the testator intended it to be operated upon by the will at his death, rather than to the opposite inference, that he meant to revoke the devise. The Ohio statute is substantially the same as ours, and in the well considered case of *Brush* v. *Brush*, 11 Ohio, 287, it received a careful examination, and it was there decided that the rule is, " If the will conveys the whole estate, and the subsequent disposition, by deed or otherwise, does not transfer the whole estate, but leaves a portion which would descend as at law, the devise attaches to such descendible portion, and carries it to the devisee."

It is not at all certain that even under the old rule the conveyances made of the land by the testator would have revoked the devise, for there are many cases holding that conveyances of part of the estate will not operate as a revocation if the land specifically devised remained in the testator at the time of his death. *Warren* v. *Taylor*, 56 Iowa, 182 ; S. C., 2 Am. Probate R. 36 ; *Zimmerman* v. *Zimmerman*, 23 Pa. St. 375 ; 1 Redf. Wills (4th ed.), 339 ; *Hawes* v. *Humphrey*, 9 Pick. 350 ; *Carter* v. *Thomas*, 4 Greenl. 341 ; *Skerrett* v. *Burd*, 1 Whart. 246 ; *Brown* v. *Thorndike*, 15 Pick. 388. But we need not pursue this line of thought further, for the reason that our statute supplies the rule which controls the case.

The doctrine of ademption applies only to legacies, and not to specific devises of real estate. The case referred to by appellant's counsel recognizes the distinction between specific devises and legacies.. DENIO, C. J., in speaking of the rule, said : " It is usually stated that general legacies may be adeemed by advancements made by the testator in his lifetime, and that the question whether a particular advancement should or should not be a satisfaction, or in satisfaction of what the testator had bequeathed to the person so advanced, is a question of fact to be determined only by reference to the intention of the donor." *Langdon* v. *Astor*, 16 N. Y. 8, *vide* p. 33. In Roper on Legacies, 379, it is said : " Neither

does the principle which governs cases of ademption discussed in the present section extend to devises of real estate." In support of this proposition the author cites the case of *Davys* v. *Boucher*, 3 Y. & Coll. 397. In *Weston* v. *Johnson*, 48 Ind. 1, a careful examination of the subject was made, and it was held that the doctrine of the ademption of legacies, by advancement to the legatee by the testator in his lifetime, has no application to devises of real estate. The court, in the discussion of the question of ademption in *Campbell* v. *Martin*, 87 Ind. 577, said: " But we know of no reason whatever for the extension of this doctrine, and making it applicable to devises of real estate." In the case of *State, ex rel.*, v. *Crossley*, 69 Ind. 203, there was a legacy of money, and not a devise of real estate. Notwithstanding the fact that there was a legacy of money in that case, and not a devise of land, the court held that there was no ademption, because the circumstances indicated that there was no intention to adeem the legacy by the advancement. In the present case, the circumstances are more clearly against the intention to adeem than they were in the case cited, so that, even if we could put a legacy of money and a devise of land upon the same footing, that case would be strongly against the appellant. It is evident, however, from the nature of the doctrine of ademption that it can not have any application to a devise of land, because it exists only in cases where the subsequent act extinguishes the specific legacy. 3 Pomeroy Eq. Jur., sec. 1131.

There is another reason in addition to those given why the appellant's contention upon this branch of the case can not prevail, and that reason is that the doctrine of ademption or satisfaction only applies where the donor stands *in loco parentis* to the legatee. In the case of a legacy to a stranger no presumption of satisfaction arises, and a grandson stands to the grandfather as a stranger for the purposes of this rule. *Ex Parte Pye*, 18 Vesey, 140; *Richardson* v. *Richardson*, Dud. Eq. 184; *Allen* v. *Allen*, 13 S. C. 512; S. C., 1 Am. Prob. R. 479; *Shudal* v. *Jekyll*, 2 Atk. 516; *Powel* v.

*Cleaver*, 1 Bro. Ch. 499; *Lyddon* v. *Ellison*, 19 Beav. 565. There seems to be some confusion in Judge Story's statement of the law upon this subject, for it is not easy to harmonize the doctrine of sections 1111 and 1112 with that stated in sections 1116 and 1117 of his work on Equity Jurisprudence, but the cases cited by him, as well as those cited by us, clearly declare that unless the grandfather stands *in loco parentis*, he and his grandson are, so far as concerns this rule, regarded as strangers. In the present case there is nothing showing that the testator occupied that position toward his grandson.

Judgment affirmed.

Filed Dec. 9, 1884.