HELEN B. ANGELL & another *vs.* SPRINGFIELD HOME FOR AGED WOMEN & others.

Hampden.     September 27, 1892. — October 20, 1892.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

### Devise and Legacy.

A testator by his will, after disposing of a certain sum in legacies, gave " the dividends and income of my shares of stock of " certain banks named, including the C. Bank, " to the amount of ten thousand dollars " to a certain charitable institution, and directed that " it be kept as a permanent fund, . . . the income of which only shall be expended," that " in the expending of said income " preference should be given to a class of persons named, and that " the said shares of bank stock shall not be sold unless it becomes absolutely necessary." By another clause of the will, he gave a similar amount to another charitable institution, to be constituted in part of certain specified shares of stock, and the balance of the sum to be made up from other property not specifically devised. By a third clause of the will, after certain devises, he gave all the residue and remainder equally to the two institutions, to be added to the fund given by the preceding clauses, " and to be a permanent fund, the income only to be used." The testator had in his own name shares in the banks named, the aggregate market value of which was $7,800. In addition to these shares, there were sixteen other shares of the stock of the C. Bank, of the market value of $2,300, in which the testator was interested. The certificates for the sixteen shares stood in the name of the testator's sister F., who died five years previously, and who owned them until her death, and who by her will gave the rest and residue of her estate to the present testator and her brother J. " to have and to hold the same

to them and the survivor of them and to the heirs of such survivor forever"
The testator and J. were appointed administrators with the will of F. annexed,
and took possession of all her estate, including the sixteen shares of stock, but
did not change the certificate. J. died four years later, and up to that time the
dividends on the sixteen shares were drawn sometimes by the testator and some-
times by J. The testator, whose will was made three months after J.'s death,
was appointed administrator of J.'s estate, but never qualified. After the testa-
tor's death, A. was appointed adminstrator of J.'s estate, and made no claim to
the sixteen shares. A. was also appointed administrator *de bonis non* with the
will annexed of the estate of F., and filed an inventory including the sixteen
shares. *Held,* that the testator intended to give to the institution first named
the shares of the banks specified in that clause, either standing in his own name
or in which he had the beneficial interest under the will of F., to the amount of
$10,000 in market value.

A testator by his will gave "the use of my share of the homestead and furniture,
and of all property save small legacies left as a residue and remainder, for one
year after my decease, and as much longer as she shall choose to stay and use
the same," to H. ; "and after the settlement of my estate, I give to her during
her life the use of three fifths, and to her brother, J., the use during his life of
two fifths of the rest, residue, and remainder of my estate," the same to "be held
in trust for him" by the executor of the will; and provided that "whatever
household furniture there may be over and above the wants of H., I wish her
to distribute among family relatives, according to her best judgment." *Held,*
that the testator meant to give to H. the use of the testator's share of the home-
stead and furniture so long as she should choose to stay at the homestead,
charging her to distribute among the family relatives any furniture which she
might not herself want; that "the rest, residue, and remainder" of his estate
included all his property (except the share in the homestead and furniture) not
needed to satisfy the legacies given in the preceding clauses of the will; that
of the residuary property H. was to have the use during the time reasonably
consumed in the payment of debts and legacies and other matters connected
with the settlement of the estate; and that the court could not determine what
was intended by the words "save small legacies."

BARKER, J.   This is a bill brought to obtain instructions as
to the meaning of the twelfth and fourteenth clauses of the will
of one Margaret H. Lombard.   The testatrix died on July
23, 1890.   We assume, as the contrary is not claimed by any
party, that upon any construction of the will her estate is ample
to satisfy all her legacies.   The first eleven clauses dispose of
$5,100 in legacies, varying in amount from $100 to $2,000,
and of ten shares of stock in the New York, New Haven, and
Hartford Railroad, and of forty shares of Boston and Albany
Railroad stock, and of her wardrobe and keepsakes.   The next
three clauses are as follows:

"12. I give the dividends and income of my shares of stock
of the following named banks, First National Bank, Second
National Bank, Chapin National Bank, and John Hancock

National Bank, to the amount of ten thousand dollars, to the Springfield Home for Aged Women, a corporation established by law, and located in said Springfield, and I direct that it be kept as a permanent fund, to be known as 'The Lombard Fund,' the income of which only shall be expended. And I direct that in the expending of said income preference shall be given to the care and benefit of old ladies designated and recommended by the pastor for the time being of the Unitarian Church in said Springfield. And I further direct that the said shares of bank stock shall not be sold unless it becomes absolutely necessary. I also give to said Springfield Home for Aged Women one thousand dollars, as a memorial of my deceased sister, Eliza Lombard, to be paid to said corporation within one year after my decease.

" 13. I give to the Springfield Hospital, in said Springfield, certificate of stock of Connecticut and Passumpsic River Railroad, No. 58, dated May 13, 1887, for twenty shares, and also enough more from such other part of my estate, not otherwise specifically devised and bequeathed, as my executors shall think best to take it from, to make up the sum of ten thousand dollars to be known as 'The Lombard Fund,' to endow a bed, to be called and known as 'The Lombard Bed,' in the use and occupancy of which my relatives are to be preferred.

" 14. The use of my share of the homestead and furniture, and of all my property, save small legacies left as a residue and remainder, for one year after my decease, and as much longer as she shall choose to stay and use the same, I give to Helen B. Angell, she paying the taxes and necessary repairs. And after the settlement of my estate, I give to her during her life the use of three fifths, and to her brother, John L. Bardwell, the use during his life of two fifths of the rest, residue, and remainder of my estate. In case of the death of Helen B. Angell during said John L. Bardwell's lifetime, then I give him the use of the whole during his lifetime; and in case of his death during her lifetime, then I give her the use of the whole of said residue and remainder during her lifetime; but his use of more than two fifths is conditioned upon his residence in said Springfield.

" After the death of both said Helen B. Angell and John L. Bardwell, I give, devise, and bequeath all the residue and

remainder, in equal shares, to the Springfield Hospital and to
' The Springfield Home for Aged Women,' to be added to and
become a part of ' The Lombard Fund,' hereinbefore given to said
corporations, and to be a permanent fund, the income only to
be used, and upon the terms and conditions before stated.   The
share of the residue and remainder devoted to the use of John
L. Bardwell shall be held in trust for him, and I designate my
executrixes, hereinafter named, as the trustees, without bonds.

" Whatever household furniture there may be over and above
the wants of Helen B. Angell, I wish her to distribute among
family relatives according to her best judgment."

The only remaining clause contains the appointment of exec-
utrixes.   The will was made on April 22, 1890.

The testatrix had in her own name twenty shares of stock of
the First National Bank, of the market value of $2,800; five
shares of the Second National Bank, of the market value of
$750; twelve of the John Hancock National Bank, of the mar-
ket value of $1,500; and nineteen of the Chapin National Bank,
of the market value of $2,755; the aggregate market value of
these shares being $7,805.  In addition to these shares, there
were sixteen other shares of the stock of the Chapin National
Bank, of the market value of $2,320; making, with the bank
stocks standing in her own name, an aggregate market value of
$10,125, in which sixteen shares the testatrix was thus interested.

The certificates for these shares stood in the name of one
Frances Lombard, her sister, who died in 1885, and who owned
them until her death, and who by her will, proved and allowed
on October 7, 1885, gave the rest and residue of her estate
to this sister, Margaret H. Lombard, and to her brother, Justin
Lombard, " to have and to hold the same to them and the sur-
vivor of them and to the heirs of such survivor forever."
Margaret and Justin Lombard received letters testamentary,
with this will of Frances Lombard annexed, on October 7, 1885,
and took possession of all her estate, including these sixteen
shares; but they did not change the certificate.   Justin died on
January 30, 1890, and up to that time the dividends on the
sixteen shares were drawn, sometimes by him and sometimes by
Margaret.   Margaret was appointed administratrix of the estate
of Justin on May 7, 1890, but never qualified.   After the death

of Margaret, one Lee was appointed administrator of the estate of Justin, and as such administrator makes no claim to the sixteen shares. Lee was also appointed, on November 4, 1890, administrator *de bonis non* with the will annexed of the estate of Frances Lombard, and as such filed an inventory, including the sixteen shares. Afterward, on October 7, 1891, upon his petition, reciting that all claims against the estate had expired, and that it had been fully administered except as to the rest and residue thereof, and that he had in his hands a large amount of personal property, and asking instructions as to whom he should pay it over, the Probate Court decreed that immediately upon the death of Justin Lombard the property vested absolutely in Margaret Lombard, with full power of disposal by will or otherwise, and ordered Lee to pay the same to the executrixes of her estate. We regard this petition of Lee, and the decree of the Probate Court thereon, merely as showing that the shares are now in the control of the petitioners in the present case, and so subject to be disposed of in accordance with our decree, if we find that Margaret Lombard intended such a disposition of them.

1. It appears that, although Margaret Lombard never held in her own name certificates for these sixteen shares, she had held in her possession jointly with her brother the certificate, which was in the name of her deceased sister, for more than four years before the making of her own will; that she was at the same time jointly interested in the shares with her brother, with a right of survivorship; and that for some months before she executed her own will she held by survivorship the sole beneficial interest in the shares, the certificate of which had during the same time remained in her own sole possession. These shares were moreover but a part of what it seems was a large property, not needed for any debts or charges of the estate of her deceased sister, and the beneficial interest in which she must have long considered to be jointly in herself and her brother Justin, and which she must have considered to be in herself alone by survivorship after his death in January, 1890. Under these circumstances it is impossible to escape the conclusion that, when she came to execute her own will, in the April following her brother Justin's death, she considered the sixteen shares as her own, and intended to dispose of them by her will.

Coming to the construction of the twelfth clause, and placing ourselves as nearly as possible in her situation, we find no difficulty in ascertaining its meaning. With the sixteen shares of Chapin National Bank stock to which she was entitled as part of the residuary estate of her deceased sister, she was the owner of shares in banks, named in this clause, of the aggregate market value of $10,125. It is very plain that she intended by that clause to give to the Springfield Home for Aged Women those shares, up to the amount of $10,000 in market value, directing that the legacy should be kept as a permanent fund, to be known as the Lombard Fund, of which the income only should be expended by the legatee, and further directing that the legatee should not sell the shares unless it should become necessary. The gift of the dividends and income of the shares to that amount was clearly intended as an absolute gift of the shares; *Chase* v. *Chase*, 132 Mass. 473, and cases cited; and not as a gift of the income and dividends merely, to be accumulated until they should amount to the sum mentioned. If, as contended by the other parties, the testatrix had designed to give only the income of the shares, and to have that income accumulated until it amounted to the sum of $10,000, she would no doubt have expressed in plain terms an intention so complicated and unusual; and she could not in that case have used the language which she did employ, especially the direction that "it," referring to the ten thousand dollars' worth of enumerated shares, "be kept as a permanent fund," and that "the said shares of bank stock shall not be sold unless it becomes absolutely necessary." The latter direction is not limited in point of time; yet, upon the theory that the clause does not dispose of the stock itself, the will makes no further specific gift of them, and there could be no object in directing that, after the income had been accumulated, the shares themselves should not be sold. The thirteenth clause, the construction of which has not been questioned, and the final residuary provision in the fourteenth clause, both support the conclusion to which we have arrived. The thirteenth clause gives to another local charity, the Springfield Hospital, a like sum of $10,000, to be also known as a Lombard Fund, to be constituted in part of certain specified shares of stock, the balance of the sum to be made up from other property

not specifically devised; and this is a legacy to take effect immediately; while the fourteenth clause divides the final residue equally between these two local charities, thus showing an intention to treat these two legatees substantially alike.   We are therefore of opinion that by the twelfth clause of her will the testatrix intended to give to the Springfield Home for Aged Women the shares of the banks therein named, either standing in her own name or in which she had the beneficial interest under the will of Frances, to the amount of $10,000 in market value; and that it is the duty of her executrixes to procure the transfer of those shares to that amount to the legatee; and that, as the bequest is in effect a specific legacy, it carries the dividends paid upon the shares since the death of the testatrix.

2. The question of present importance as to the construction of the fourteenth clause is as to what portion of the estate Helen B. Angell was entitled to the sole use of, and for what period of time.   The first portion of this clause is somewhat blindly expressed, but we are of opinion that the testatrix meant to give to Helen B. Angell the use of the testatrix's share of the Lombard homestead and furniture so long as she should choose to stay at the homestead, charging her to distribute among the family relatives any furniture which she might not herself want; and, that, in the contemplation of the testatrix, the "rest, residue, and remainder" of her estate, in the use of which, after the settlement, Helen B. Angell and John L. Bardwell are to share during their lives, included all her property (except the share in the homestead and furniture) not needed to satisfy the legacies given in the first thirteen clauses of the will.   Of this residuary property Helen B. Angell is to have the use during the time reasonably consumed in the payment of debts and of the legacies contained in the first thirteen clauses, and such other operations as may arise in the settlement of the estate.   Such is the property "left as a residue and remainder," that is not otherwise previously disposed of.   Just what was intended by the words " save small legacies," we cannot determine; but we do not understand any claim to be made that Helen B. Angell was intended by this clause to take for one year after the death of the testatrix the income of all the estate not given in small legacies; while the words "and as much longer as she shall choose

to stay and use the same" clearly refer to the homestead and furniture. It is now more than two years since the death of the testatrix, and the case discloses nothing remaining to be done in the settlement of the estate which ought not to be concluded upon ascertaining the decision in the case at bar. The bequest of John L. Bardwell is to take effect after the settlement of the estate, and the share given him is only for life, and is to be held in trust by the petitioners. It is therefore their duty as soon as possible to ascertain and set apart his two fifths of the residue, in accordance with the construction arrived at in this decision, and to hold it for his benefit during his life.

It is unnecessary now to determine any questions which may arise if he shall survive Helen B. Angell, and shall cease to reside in Springfield; or what would become of the testatrix's share of the homestead in contingencies which may not occur.

At the death of both Helen B. Angell and John L. Bardwell, it is clear that all that then remains of the estate of the testatrix is to be equally divided between the Springfield Home for Aged Women and the Springfield Hospital.

*Decree to be framed accordingly.*

*T. M. Brown*, for the Springfield Hospital.

*G. Wells & W. W. McClench*, (*J. Barnes* with them,) for the Springfield Home for Aged Women.

*C. L. Long*, for John L. Bardwell.