IN RE THE ESTATE OF MATTHIAS FRAHM, Deceased, PAULO RODDOWIG *et al*, Executors, v. JOHN STEFFEN, Guardian of the Property of Matthias H. T. Frahm, a Minor, Appellant, AND CATHERINE LANGE *et al*, Appellees.

Wills: CONSTRUCTION OF: STOCKS AND BONDS: LEGACY. Test-
1    ator died owning stock in a corporation, which he bequeathed to certain heirs. Prior to his death he made an arrangement with the corporation by which the same was to be converted into bonds   Pending the issuance of the bonds, however, a corporation note was to be given in exchange for the stock. The stock was issued but not delivered during the life of the testator, and his executors exchanged the stock for the note. *Held*, the legatees were entitled to the stock or the proceeds derived therefrom, under the provisions of the will.

Legacy: STOCKS AND BONDS: ADEMPTION. The acceptance by the
2    executors of a testator of a note which he agreed to take in lieu of certain stock or bonds of a corporation owned by him and bequeathed by his will, does not amount to an ademption of the legacy.

Latent Ambiguity: PAROL EVIDENCE. Parole evidence is admissible
to explain latent ambiguities arising from a testator's contract
regarding his property.

*Appeal from Scott District Court.*—HON. JAS. W. BOL-
LINGER, Judge.

FRIDAY, APRIL, 10, 1903.

THIS is a proceeding for the construction of the will of
Matthias Frahm, deceased. The guardian of Matthias H.
T. Frahm, a minor, appeals from a decree finding that
certain shares of stock, or the proceeds thereof, passed to
legatees under the will. He contends that these shares of
stock were not owned by the deceased at the time of his
death, and that if, the deceased ever at any time owned
them, the legacy has been adeemed.—*Affirmed.*

*Alfred Clauson* and *W. M. Chamberlain* for appellant.

*Schmidt & Vollmer, Heinz & Fisher* and *Waldo
Becker* for appellees.

DEEMER, J.—By his will and the codicils attached
Matthias Frahm provided, among other things:

"VII. All the balance of bonds and shares of stock
of the Davenport Malting Co. owned by me and not spec-
ially bequeathed above or in my will I give and bequeath
as follows: to wit:—One-thirteenth of said bonds and
one-thirteenth of said shares of stock to each of the fol-
lowing parties to wit:—

"1st. party,—the heirs of Peter Frahm, deceased.

"2nd. party,—the heirs of Claus Frahm, deceased.

"3rd. party,—the heirs of Jergen Frahm, deceased.

"4th. party,—the heirs of Detlef Frahm, deceased.

"5th. party,—the heirs of Johann Frahm, deceased.

"6th. party,—the heirs of Hans Frahm, deceased.

"7th. party,—the heirs of Frederich Frahm, deceased.

"8th. party,—the heirs of Max Frahm, deceased.

"9th. party,—the heirs of Heinrich Frahm, deceased.

"10th. party,—Margaretha Siert.

"11th. party,—Christ Diehn.

"12th. party,—Catherine Lange.

"13th. party,—Peter Hartwigsen of Sioux County, Iowa, under this condition: Said Hartwigsen shall receive the income of this share during his life time, and after his death, this share shall pass to Mary Moeller and Willie Moeller, the two eldest children of Hans Moeller, being grandchildren of Peter Hartwigsen.  *  *  *

"As I have either sold or given an option on my shares in the Davenport Malting Company at 65 cents and 75 cents on the dollar of the par value of the same, I herewith provide that wherever in my said will and codicil thereto, I have given a legacy consisting of a certain amount of said shares, in lieu thereof I now give and bequeath a sum of money equal to sixty-five per cent, of the par value of said shares, to take the place thereof."

In other provisions of the will testator disposed of $175,000 worth of bonds and $18,700 worth of stock to other legatees. He in fact had at one time an interest in the Davenport Malting Company, a corporation, amounting to $50,000, so that, had he retained his interest until his death, there would have been an interest of $13,800 in that corporation which would have passed under the clauses of the will we have quoted, or gone into his general estate for disposition under other clauses of the will or as provided by statute.

There is little or no dispute regarding the facts, and such as are regarded material we shall here state: The original will was drawn November 28, 1895. The first codicil, from which we have quoted, was made August 16, 1897, and the last November 19, 1898. It appears from the evidence that in October of the year 1894 the testator, who, with his son, was engaged in conducting a brewery, entered into an arrangement with a number of other men,

who were engaged in a like business, to consolidate their plants into a corporation to be known as the Davenport Malting Company. Testator's interest in the new concern was fixed at $50,000, which was to be placed to his credit until stock or some other evidence of his holdings should be issued to take its place. Thereafter it was agreed between the parties in interest that each should receive for the property he had turned in, equal parts of stock and bonds for his interest. In other words, Frahm was to receive $25,000 in stock and $25,000 in bonds. Finding that such a large indebtedness would be illegal, an arrangement was made whereby each was to receive sixty-five per cent. of their interest in stock and thirty-five per cent. in bonds, and that, as soon as conditions would permit, each stockholder might exchange an amount of stock not exceeding fifteen per cent, of his total holdings for bonds of the corporation in an amount equal to the full value of the stock. In November of the year 1898 some of the holders of interests in the consolidated concern, in cluding testator, petitioned that corporation to carry out its contract, and execute negotiable notes for the unissued amount of bonds coming to them. Some time prior to the presentation of this petition testator sold two hundred and fifty shares of stock in the corporation to one Koehler, and this, in a measure, at least, explains the third codicil of the will, from which we have quoted. Shares of stock were filled out on the company's books as follows: To Matthias Frahm one for two hundred and fifty shares and another for seventy-five shares. Appellant contends that the certificate for the seventy-five shares was never delivered, but more as to that hereafter. After the death of Frahm, which occurred November 29, 1898, the executors of his will took a note from the Davenport Malting Company for $7,500, which they now hold, and which is in reality the subject-matter of this litigation.

The trial court found that the legatees under the provisions of the will we have quoted were entitled to the seventy-five shares of the stock, or the proceeds therefrom, including the note we have mentioned, and all dividends and income therefrom.   Appellants contend that deceased never owned seventy-five shares of stock in the Davenport Malting Company, and that nothing passed under the provisions of the will quoted.   They also contend that, as no bonds were ever issued, the note or the money derived therefrom could not pass under the will, and that, in any event, as the testator, before his death, made a contract by the terms of which he was to take a promissory note in lieu of stock or bonds, the legacy was adeemed.

It will be noticed that at the time of the making of the will and codicils quoted two certificates of stock had been issued in favor of Frahm, one for 1. CONSTRUC-  two hundred and fifty shares and the other TION of will; stocks and for seventy-five, and that bonds had been bonds: leg- acy.  issued to him in the sum of $17,500.   Before the making of the last codicil quoted he had sold the certificate for the two hundred and fifty shares, but the exchange of the seventy-five shares for the $7,500 note had not at that time been made.   He had joined in a petition asking for such a change, but this was not in fact made until after his death, when the executors really made the exchange.   Neither the bonds nor the certificates of stock were taken by any of the persons interested therein.   They were left with the corporation, pursuant to an agreement among the parties in interest, in order that the original agreement to take half in stock and half in bonds might be carried out.   Under the agreement the testator was entitled, whenever the indebtedness of the corporation would permit, to have seventy-five shares of the stock issued to him converted into bonds of the company. He never in fact received but $17,500 in bonds, although, under the original arrangement, he was entitled to $25,000.

He sold $25,000 of his stock,· or the certificate for the two-hundred and fifty shares before making the last codicil to his will, which is the last paragraph we have quoted; hence his reference therein to his sale of stock.

The note which lies at the bottom of this controversy was issued pursuant to the following resolution passed by the directors of the malting company corporation in response to the petition hitherto mentioned, which was 'signed by Frahm and others: "Motion by Herman Wolf, seconded by George Mengal, to carry out our contract formed at the time of the consolidation to hold equal parts of stock and bonds, and to issue to owners for that part still due in bonds, notes payable on or before two years from January 1, 1899, at five per cent interest per annum."

Did the seventy-five shares of stock, or the note issued in lieu thereof, pass under the will to the thirteen legatees named? Appellant says, "No," because the stock was never delivered to Frahm, and, if it had been, he (Frahm) had at the time of his death made an agreement to take the note of the company in lieu thereof, and that this right or this note could not and did not pass under the will. The will passed all the balance of the bonds and stocks owned by him (testator) to the thirteen legatees. At the time of his death there had been issued seventy-five shares of stock, which were convertible into bonds of the company, and for which the company had agreed at some time to issue its promissory note. Construing the will in the light of these facts and the other evidence in the case, we are abidingly satisfied that the testator intended the seventy-five shares of stock which stood in his name to pass to the thirteen legatees. True, he had signed a petition requesting that a note be issued in their place, which had been accepted by the company; but no note had in fact been issued, and there is little doubt that he intended this $7,500 interest, no matter what its form, to pass under the paragraphs of the will quoted. The evidence introduced

in support of this contention is practically conclusive. That the stock certificate had not in fact been actually delivered to Frahm before his death is not regarded as controlling. It had been issued, was shown on the books of the company and was left with it for the purpose of carrying out the original contract between the parties. As such it passed under the will. *Angell v. Springfield Home*, 157 Mass. 241; *Cummings' Estate*, 153 Pa. 397 (25 Atl. Rep. 1125); *Ellis v. Eden*, 25 Beavan, 482.

II.   But it is said the legacy was adeemed by the contract for the conversion of the stock into a note of the company.   The general rule is that, when a chattel specifically bequeathed by a testator is sold or conveyed by him during his life, the legacy is adeemed.    *Unitarian Society v. Tufts*, 151 Mass. 76 (23 N. E. Rep. 1006, 7 L. R. A. 590). But slight or immaterial changes in the form of the property bequeathed will not work an ademption, *Brady v. Brady*, 78 Md. 461 (28 Atl. Rep. 515); *Prendergrast v. Walsh*, 58 N. J. Eq. 149 (42 At. Rep. 1049).   Nor does the rule apply to general legacies. *Littig v. Hance*, 81 Md. 416 (32 Atl. Rep. 343). We are inclined to the view that the legacy here was specific, in that the testator refers to particular bonds and stocks, and that the bequest could not be satisfied by the delivery of bonds or stocks of any other kind. *Davis v. Close*, 104 Iowa, 261; *Unitarian Case, supra*; *McFaddin v. Heffley*, 28 S. C. 317 (5 S. E. Rep. 812, 13 Am. St. Rep. 675.)   What then, of the petition to take a note in place of the stock and bonds, which had been accepted by the company before the testator's death?   Did this work an ademption?   We are constrained to hold that it did not.   At the time of his death Frahm was still the owner of the shares of stock, which were being held by the company, it is true, for the purpose of carrying out the original agreement to convert them into bonds, and his petition to issue a negotiable note in lieu thereof had been accepted by the company, but no

*Marginal note: 2: LEGACY: stocks and bonds: ademption.*

note had been issued, nor was there any definite contract as to when it should be. The conduct of the executors after the death of Frahm would not, of course, adeem the legacy. *Patton v. Patton*, 55 N. C. 494. There had been no substitution in fact of anything in place of the stock, and the mere right to substitute would not work an ademption. By the later authorities the question is made to turn to some extent at least on the intent of the testator. *Swails v. Swails*, 98 Ind. 511; *Beall v. Blake*, 16 Ga. 119; *White v. Winchester*, 6 Pick. 48. Giving effect, then, to the testator's intent as deducted from the will itself and from the evidence regarding the subject-matter both before and after the will was executed, we have no difficulty in arriving at the conclusion that the legacy was not adeemed. As supporting these views, see, also, *In re Bradley's Will*, 73 Vt. 253 (50 Atl. Rep. 1072).

Parol evidence was admissible in this case for the purpose of identifying the subject-matter. In view of the various contracts and agreements made by the testator

3. LATENT am-  with reference to his bonds and stocks in the
biguity: parol
evidence.       corporation, there was a latent ambiguity,

which could be explained by parol evidence. *Eckford v. Eckford*, 91 Iowa, 55; *Chambers v. Watson*, 60 Iowa, 339; *Decker v. Decker*, 121 Ill., 341 (12 N. E. Rep. 750); *Brandon v. Yeakle*, 66 Ark. 377 (50 S. W. Rep. 1004). The evidence makes the intent of the testator clear, and distinctly negatives the thought that he purposed an ademption.

III. Some matters of practice are argued by appellant. They do not seem to have been raised in the trial court and consequently cannot be considered here. All these matters seem to be ruled adversely to him, however, by *Schoening v. Schwenk*, 112 Iowa, 733.

The court correctly construed the will, and its decree is AFFIRMED.