# THE

# MISCELLANEOUS REPORTS

OF THE

## STATE OF NEW YORK.

COMMENCING MARCH, 1918.

BENJAMIN H. ROSENSTEIN and GORDON S. P. KLEEBERG, as Trustees under the Last Will and Testament of JULIUS SANDS, Deceased, Plaintiffs, *v.* ROSE S. ROSENSTEIN, Defendant.

(Supreme Court, New York Special Term, March, 1918.)

Wills — action for construction of — trusts — trustees — statutes — partnership — corporations — intestacy.

Where by testator's will practically his entire estate was given in trust with unlimited discretion in the trustees, and without liability on their part, to continue the business of an existing partnership between him and his brother, if the firm should be in existence at testator's decease, and later a corporation was formed to acquire and carry on the partnership business of which testator always had been the active manager and at his death was practically sole owner, the trust so created for an indefinite period not measured by lives in being was in violation of the statute against perpetuities, the validity of said trust being determinable from the same point of view from which it would be regarded had a suit been brought at the time of the testator's death to determine the validity of the will.

A contention, that the trust provision having become inoperative by reason of the dissolution of the corporation and rendered inoperative by the investment of the funds of the estate in other manner the trust was relieved of its invalidity, cannot be sustained.

1

It was testator's intention to provide for continuing the investment of the trust estate in the business of the partnership, and the mere taking over of said business and its continuance by the corporation was a change in form but not of substance so far as the will is concerned.

Action by trustees under a last will and testament and codicil to obtain a judicial construction and determination thereof.

Pratt, Koehler & Boyle, for plaintiffs.

Myers & Goldsmith, for defendant.

Guy, J.   This action was brought by the trustees under the last will and testament of Julius Sands, deceased, and a codicil thereto, to obtain a judicial construction and determination of the provisions thereof.  The testator died on June 8, 1903, leaving a will dated June 23, 1892, and a codicil thereto dated February 8, 1899, both of which were duly admitted to probate.  The testator left him surviving as his only heirs at law and next of kin his widow, Esther H. Sands, and three children, the defendant Rose or Rosa S. Rosenstein, who had, prior to testator's death, married the plaintiff Benjamin H. Rosenstein; Minnie E. Sands, who, after testator's death, married Leon J. Stern, and Willard J. Sands.  Minnie S. Stern (Minnie E. Sands) died on October 14, 1909, leaving no lawful issue her surviving; Willard J. Sands died on December 30, 1916, having never married and leaving no lawful issue him surviving, and Esther H. Sands, the widow, died on April 25, 1917.  No children have been born to the defendant Rose S. Rosenstein, and she is now the only surviving legatee and devisee named in the testator's will and codicil, his brother-in-law, Joseph Bernheim, having died prior to the testator.

At the date of the execution of the will (1892) there was in existence a copartnership known as Sands Brothers, composed of Julius Sands, the testator, and his brother, Morris Sands, which was carrying on a general merchandising business in Helena, Mont. In January, 1898, a corporation was formed under the laws of Montana under the name of Sands Brothers Company, for the purpose of carrying on a general merchandising business at Helena, Mont., with an authorized capital stock of $50,000, divided into 500 shares of $100 each. The incorporators and directors were Julius Sands, Morris Sands, S. L. Holzman, Jacob Switzer and Oliver C. Kirkwold. This corporation was organized for the purpose of acquiring and carrying on the copartnership business aforesaid, and it thereafter duly acquired the same and issued 492 shares of its capital stock to the testator and two shares to each of the four other incorporators and directors. At the date of testator's death in 1903 the corporation was still carrying on the said business, and the testator still owned his 492 shares of stock therein. The testator appears to have been the active manager of the business, as he was, in fact, practically its sole owner. He carried it on " for his own pleasure practically," always referred to it as his own business, and acted with reference to its management in all respects after the corporation was formed as he had during the partnership. At divers times prior to his death he loaned money to the corporation. The codicil to the will merely revoked an annuity and substituted his son-in-law for his brother-in-law as an executor and trustee. In his will the testator provided as follows: " If the copartnership firm of Sands Brothers (composed of my brother Morris and myself), now doing business at Helena, Montana, be in existence at the time of my decease, then I authorize and empower

my executors and trustees, with the consent of my said brother Morris, to continue such business after my death for such period of time as my said executors and trustees may deem judicious and advisable, anything herein or otherwise to the contrary notwithstanding, and during such period goods may be purchased, employees engaged and all such obligations may be contracted in connection with said business as may be usual or necessary for the proper conduct thereof, or as my said executors and trustees may deem necessary and advisable and as to my share thereof and interest therein at the risk of the estate and without responsibility or liability therefor on the part of such executors and trustees. The profits realized from such business shall be considered as interest or income and disposed of accordingly.'' In the 5th paragraph of the will the testator directed his trustees to invest his residuary estate as thereinafter provided, and to '' pay over the interest or income arising therefrom from time to time to my said wife, Esther H. Sands, for and during the term of her natural life, and upon her decease the principal of said fund shall be divided into three equal parts or shares,'' to be held in trust as thereafter provided. The defendant contends that the 2d paragraph violates the statute against perpetuities, because of the authority given to the trustees to continue the business for such period of time as they may deem advisable, and that the trusts provided for in the 5th paragraph as to the residuary estate fall because inseparably connected with and dependent upon said 2d paragraph. By the will the testator's entire estate (except a gift of wearing apparel to his widow) is given in trust, with unlimited discretion in the trustees, and expressly without liability on their part, to continue the business of Sands Brothers if said copartnership firm (composed of the testator and his

brother Morris) should be in existence at the time of
the testator's decease. There can be no question that the
trust so created was in violation of the statute against
perpetuities, being created for an indefinite period
not measured by lives in being, and the validity of the
trust so created " must be determined not in the light
of what has actually transpired, but from exactly the
same point of view from which it would be regarded
had a suit been brought to determine the validity
of the will at the time of the death of the testator,
instead of at a subsequent period. That is to say,
the validity of a will depends not on what has hap-
pened since the death of the testator, but on what
might have happened. * * * it is not sufficient
that the estates attempted to be created may, by the
happening of subsequent events, be terminated within
the prescribed period, if such events might so happen
that such estates might extend beyond such period."
*Matter of Wilcox,* 194 N. Y. 288, 294, 295. " The
rule is that where, by the terms of an instrument creat-
ing an estate, there may be an unlawful suspension
of the power of alienation or of the absolute owner-
ship, the limitation is void, although it turn out by
subsequent events that no actual suspension beyond
the prescribed period would have taken place. In
other words, to render such future estates created by
will valid, they must be so limited that in every possible
contingency they will absolutely terminate within the
period of two lives in being at the death of the testator,
or the estate will be held void." *Herzog* v. *Title Guar-
antee & Trust Co.,* 177 N. Y. 87, 99. See, also, *Matter
of Tamargo,* 220 id. 225–228. The contention of
plaintiffs, therefore, that the provision of the will
having become inoperative by reason of the dissolu-
tion of the corporation, and the investment of the
funds of the estate in other manner renders said pro-

visions of the will inoperative, and the trust is therefore relieved of its invalidity, cannot be sustained. There remains, however, the question whether it was the intent of the testator to provide for investment in the discretion of the trustees or the continuing of the property of the trust in the business of Sands Brothers, or whether it was intended to make such power contingent merely upon the existence of the copartnership firm known as Sands Brothers. " It is the duty of the court to ascertain the disposition which the testator undertook and intended to make, and having ascertained that, to determine whether or not it is valid." *Simpson* v. *Trust Co. of America,* 129 App. Div. 200. See, also, *Central Trust Co.* v. *Egleston,* 185 N. Y. 23–28. In construing this provision of the will the practical construction given it not merely by the executors and trustees and family, including his former partner, stockholder in the corporation, and also the fact that the testator himself, after the incorporation of the company and until the time of his death, continued to manage the business in which he and his former partner owned all but six shares of the capital stock, continued to treat the business as his business, to advance moneys for its purposes, and failed to make, by codicil, any further provision in connection therewith, is entitled to great weight in determining the meaning of ambiguities created by the will. I am of the opinion that it was the intent of the testator to provide for continuing the investment of the trust estate in the business belonging to himself and brother at the time of the making of the will, and that the mere taking over of the business and the continuing thereof by a corporation incorporated at the instance of the testator and his former partner was a change of form and not of substance so far as the provisions of the will

are concerned. In *Walton* v. *Walton,* 7 Johns. Ch. 258, the testator in his last will and testament bequeathed thirty shares of stock in the Bank of the United States and four shares of stock in two navigation companies. The charter of the United States Bank expired between the date of the will and the date of the testator's death, and its property was conveyed to trustees, who divided it among the stockholders from time to time as received, and further dividends were to be made. Six shares were substituted for two in one of the navigation companies, and the property of the company became vested in the state. It was held that the bequests were not adeemed, and the fact that the funds were changed did not destroy their identity nor release them from the testamentary gifts. " The dry abstract doctrine of a change in the form effecting an extinction of the gift is still measurably subject to the question of intention, and the court will therefore look into the circumstances attending the change, and sometimes follow the substance, the gift still attaching in its new shape." *Doughty* v. *Stillwell,* 1 Bradf. Surr. 300. In *Matter of Frahm's Estate,* 120 Iowa, 85, the testator died owning stock in a corporation which he bequeathed to certain heirs. Prior to his death he made an arrangement with the corporation by which the same was to be converted into bonds. Pending the issuance of the bonds, however, a corporation note was to be given in exchange for the stock. The stock was issued, but not delivered during the life of the testator, and his executors exchanged the stock for the note. In holding that the legatees were entitled to the stock or the proceeds derived therefrom under the provisions of the will the court said: " Giving effect, then, to the testator's intent as deducted from the will itself and from the evidence regarding the subject-matter both

before and after the will was executed, we have no difficulty in arriving at the conclusion that the legacy was not adeemed. * * * Parol evidence was admissible in this case for the purpose of identifying the subject-matter. In view of the various contracts and agreements made by the testator with reference to his bonds and stocks in the corporation, there was a latent ambiguity, which could be explained by parol evidence. * * * The evidence makes the intent of the testator clear, and distinctly negatives the thought that he proposed an ademption.'' See, also, *Blackwell* v. *Child,* Amb. 260; *Pruyn* v. *Sears,* 96 Misc. Rep. 200. The will affords no criterion to determine what is the '' rest and residue '' of the testator's estate, and no residuary trust could arise or vesting thereof take effect until the business was liquidated or disposed of, and any vesting perforce rested upon such part of the estate as the executors and trustees might in their '' discretion '' determine was not to be employed in the business, the trust provision as to the continuance of the business stating '' anything herein or otherwise to the contrary notwithstanding,'' and power being conferred upon the trustees to incur additional obligations, with immunity granted therefor; so that the 2d paragraph in effect dedicates the entire estate of the testator to the continuance of the business, and upon its invalidity being adjudged the other trusts provided for in the will must fail. In *Underwood* v. *Curtis,* 127 N. Y. 523, 541, 542, the court say: '' If the provision for the benefit of the widow and the two unmarried daughters, during the life of the widow, is inseparably connected with the other dispositions of the will, and a necessary part of the general scheme for the disposal of testator's property, then it must fall with them and the testator died intestate.'' *Benedict* v. *Webb,* 98 N. Y. 460. '' It is a familiar principle

that when the main object of the trust is valid and when the incidental and subsidiary provisions which are invalid may be cut therefrom without affecting the trust itself, that the general plan of the testator will be preserved, but when the invalid portion cannot be separated from the valid provisions without defeating the primary object of the testator the will must fail.'' *Dresser* v. *Travis,* 39 Misc. Rep. 358–362. I am of the opinion, therefore, that the trusts created by the will offend the statute against perpetuities in that they suspend the absolute power of ownership as to personalty for more than two lives in being and suspend the power of alienation for more than two lives and a minority as to real estate; and inasmuch as the court cannot determine how much of the estate should be set apart for each trust the provisions of the will are so indefinite and uncertain that they cannot be enforced. A decree should therefore. be entered adjudging the trust provisions of the will void, and that as to the portions of the estate included within the trust dispositions the testator died intestate.

Ordered accordingly.