[Civ. No. 9140. First Appellate District, Division Two.—December 18, 1933.]

In the Matter of the Estate of HARRIET N. FULLER, Deceased.

CARRIE HASKELL ROBINSON et al., Appellants, v. FRANCES R. NELLE et al., Respondents.

FRANCES R. NELLE et al., Respondents, v. OAKLAND TRUST & SAVINGS BANK et al., Appellants.

OAKLAND TRUST & SAVINGS BANK et al., Appellants, v. FRANCES R. NELLE et al., Respondents.

Walter E. Dorn, L. W. Lovey, Vida M. Jones and Thomas M. Carlson for Respondents.

NOURSE, P. J.—This is an appeal from a judgment of the probate court admitting to probate an holographic will of Harriet N. Fuller, dated April 7, 1927, and denying probate of a mutual will executed by the deceased and her predeceased husband in July, 1926. The appellants are the contestants of the holographic will and the proponents of the mutual will. The grounds of the contest were that the execution of the holographic will was procured through fraud and duress and that it did not dispose of any property of the deceased. For these reasons it was contended that the holographic will did not revoke or modify the mutual will and therefore the contestants as proponents of the latter will were entitled to its admission to probate.

The respondent Frances R. Nelle, at the age of two years, was legally adopted by Clifford A. and Harriet N. Fuller, who had no children of their own. She was reared and treated as their natural child, living continually with her foster parents until some time after her marriage. In November, 1926, Mr. Fuller died at the age of about 90 years and thereafter Mrs. Fuller lived the greater part of the time at the home of this respondent until her death in January, 1931. Some time in the year 1920 the Fullers transferred to this respondent certain real property estimated to be of the value of $4,500 and at that time Mrs. Nelle executed an agreement waiving further claim to their estate. In July, 1926, Mr. and Mrs. Fuller executed the mutual will offered for probate by the appellants herein. This will covered an estate of about $22,000 under the terms of which Mrs. Nelle was to be given $500, her son Clifford $5,000, Mr. Fuller's relatives $7,000 and Mrs. Fuller's relatives $8,500. This mutual will was admitted to probate as the will of Mr. Fuller and distribution was made to Mrs. Fuller of an $8,500 note and mortgage and something over $500 in cash. Stock in the Southern California Edison Company, appraised at over $24,000, stood in the name of Mr. and Mrs. Fuller as joint tenants and was not distributed under this will but was delivered to Mrs. Fuller upon a decree of court in a proceeding had to terminate the joint tenancy. Mrs. Fuller,

being then 90 years of age, created a trust covering this property and a Los Angeles bank was named as trustee. On December 13, 1926, Mrs. Fuller created a new trust in which Mrs. Nelle was given $5,000, Mr. Nelle $2,000, Clifford Nelle $4,000 and the residue of the estate, and a sister of Mrs. Fuller was given $4,000. On February 2, 1927, Mrs. Fuller terminated this trust and created a new one substantially carrying out the terms of the mutual will. On February 8, 1927, she changed the latter trust, substituting William Nelle in place of a second cousin. On April 6, 1927, she changed the trust again by adding $5,000 to Mrs. Nelle's interest. On June 25, 1928, Mrs. Fuller withdrew all the property distributed to her from her husband's estate, including the note and mortgage, and gave instructions to the bank to prepare a new trust. At the same time she made a gift to Mrs. Nelle of the $8,500 note and mortgage. Her instructions to create a new trust were not carried out and on August 2, 1928, she revoked the trust with the bank and created a new trust, naming Mrs. Nelle as trustee. The bank turned all the trust property over to Mrs. Nelle and at that time the stock certificates in the Southern California Edison Company were registered in the name of "Frances R. Nelle, trustee". This trust was revoked by Mrs. Fuller a few days thereafter, but the stock certificates were permitted to remain in the name of "Frances R. Nelle, trustee", until the death of Mrs. Fuller. Intermingled with these transactions several wills were executed by Mrs. Fuller and subsequently destroyed. She left intact, however, an holographic will dated April 7, 1927, and a formal typewritten revocation of the mutual will of herself and husband. This revocation was dated May 9, 1927, and was duly witnessed.

The holographic will admitted to probate reads:

"Los Angeles, Calif.

"I, Harriet N. Fuller, do will to my daughter Frances R. Nelle, 1784 Sonoma Ave. Berkeley, Calif. all monies stocks or real estate that stands in my name at the time of my death. Signed by me this 7th day of April, 1927.

"HARRIET N. FULLER."

In their attack upon this will the contestants show that there were no monies, stocks or real estate standing in the name of the testatrix at the time of her death or (with the

exception of a small amount of money in bank) at the time the will was executed. All the real estate theretofore held or owned by the testatrix had been transferred to Mrs. Nelle or otherwise disposed of. All the stocks which had not theretofore been disposed of stood in the name of "Frances R. Nelle, trustee" at the time of the death of the testatrix though the trust under which such property was held had long since been revoked. At the time this will was executed these stocks were held by a Los Angeles bank as trustee. Though Mrs. Fuller claimed ownership of these stocks from the date of her husband's death in 1926 until her own death in 1931, they did not at any time during that period stand in her own name upon the books of the corporation. The inventory filed in this estate showed that the deceased left personal effects appraised at $10 and two blocks of this stock appraised at $24,000. The situation which thus confronted the probate court was that if the will was to be given the effect contended for by the appellants it would result in a disposition of an estate of $10 and intestacy in relation to an estate of $24,000. The parties came together on this issue, the appellants contending that because the holographic will did not dispose of the property of the estate it could not be treated as a revocation of the mutual will; the respondents contending that a reasonable interpretation must be given to the terms of the holographic will as expressing an intention of the testatrix to dispose of all her property.

The probate court adopted the theory of respondents and found that the holographic will was entitled to admission to probate and also that the holographic will, taken with the formal revocation of the mutual will, barred probate of the latter. This judgment finds sanction in section 102 of the Probate Code, which reads in part, "and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy". In interpreting the holographic will as intending to dispose of all the property owned or held by the testatrix which she was entitled to dispose of by will the judgment of the court is supported by the well-known rule that a will is always to be interpreted so as to prevent intestacy if such an interpretation is reasonably possible. (*Estate of Silva*, 169 Cal. 116 [145 Pac. 1015]; *Estate of Carrillo*, 187 Cal. 597 [203 Pac. 104]; *Estate of Friedrichs*, 107 Cal. App. 142 [290 Pac. 54]; *Angell* v. *Springfield Home*

*for Aged Women,* 157 Mass. 241 [31 N. E. 1064].) The Angell case closely resembles the case at bar. There the will read, ''I give the dividends and income of my shares of stock of the following named banks . . . '', among which was the Chapin National Bank. There were no shares of stock of this bank in the name of the testatrix but it was shown that she held jointly with her brother a beneficial interest in shares of that bank, the certificate for which stood in the name of her deceased sister. In interpreting the will the Massachusetts court held that it was the intention of the testatrix to bequeath all the shares of stock in this bank either standing in her own name or in which she had a beneficial interest.

In this interpretation of the will another rule of law comes into play—''technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, *or unless it satisfactorily appears* that the will was drawn solely by the testator, *and that he was unacquainted with such technical sense''*. (Sec. 106, Probate Code.) Thus, in the early case of *Estate of Wood,* 36 Cal. 75, 81, the Supreme Court said: ''If a word has no meaning, or is absurd, or repugnant to the clear intention manifested in other parts, it may be regarded as surplusage, or restricted in its application.'' And again (page 82): ''We are not at liberty to suppose that he (the testator) used a single word in the instrument in a sense that would defeat the operation of the whole instrument. . . . ''

For the purpose of determining the intention of the testatrix evidence, both oral and documentary, was received from both sides. This evidence disclosed that the testatrix was not familiar with the technical words used in the will, but that she assumed to cover all her property whether technically ''standing in her name'' or otherwise. In this connection the maxim of jurisprudence found in section 3529 of the Civil Code is also applicable. This section reads: ''That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due.'' When the trust covering the shares of stock was revoked it became the duty of the trustee to cause the certificates to be transferred to the name of the owner. The testatrix had the right to assume

that this duty would be performed. It cannot be contended that the evidence was not sufficient to support the finding of the probate court that it was the intention of the testatrix in the execution of the holographic will to dispose of all the property owned by her and mentioned and provided for in the mutual will. It must be conceded that this finding compels the conclusion that the holographic will effected a revocation of the mutual will and was entitled to probate.

■ But the appellants argue that all the evidence admitted for that purpose was improperly admitted because there was no ambiguity in the document. This question is a mixed question of law and fact which the trial court must determine in the first instance. On the original issue of respondent Nelle's petition for the probate of the holographic will such evidence was unnecessary and, the due execution of the will having been satisfactorily proved, it was properly admitted to probate irrespective of any question as to what property it disposed of. It was on appellants' petition for the probate of the mutual will that this question really arose and then only for the purpose of determining whether the holographic will effected a revocation of the mutual will. Hence if any evidence was improperly admitted on this issue it could not have prejudiced the appellants in this proceeding because of the finding that the mutual will was expressly revoked by the act of May 9, 1927. This finding compelled the conclusion that the mutual will should not be admitted to probate.

■ Two other points require but brief consideration. The appellants attacked the holographic will on the ground that its execution was procured through duress and undue influence. The court found the allegations untrue. Appellants do not contend that there was not sufficient evidence to support the finding; they argue that the court should have disbelieved respondents' witnesses and given credence to those called by appellants. The most that can be said for appellants' evidence on this issue is that it showed an opportunity to influence but did not show any pressure operating on the testamentary act. With the burden on the appellants such evidence would not have sustained a finding in their favor. (*Estate of Fleming,* 199 Cal. 750, 756 [251

Pac. 637]; *Estate of Bryson,* 191 Cal. 521, 541 [217 Pac. 525].)

The appellants attacked the revocation of the mutual will on the grounds that it was procured through duress and undue influence and that the signature thereon of the decedent was forged. In relation to the first ground the evidence was of the same character as that relating to the execution of the holographic will and, for the reasons just stated, the finding adverse to appellants cannot be disturbed. As to the second ground two handwriting experts were called as witnesses and each testified in harmony with the views of the party calling him. Numerous exemplars of the decedent's handwriting were in evidence. Whether the court based its finding on the testimony of the experts or upon its own examination of the exemplars there was a conflict which forecloses further inquiry.

There is a large mass of irrelevant matter in the briefs criticising the court, the counsel, and the witnesses. It is not necessary to discuss these matters as the points of law which have been covered compel an affirmance of the judgment.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 17, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 15, 1934.