## Weber's Estate.

*Wills—Bequests of business—Rights and liabilities of legatees—Construction—Intention.*

A testatrix having five sons and two daughters directed that three sons (naming them), continue the manufacturing business

owned by the testatrix in the factory also owned by her; that they should pay rent therefor to the other children as long as they continued to run the business; that they should also pay the debts of the business at the time of the death of the testatrix; and that they should divide the profits which they should make between them after the payment of said rental. Testatrix further directed that when the sons should cease to continue the business, the property should be sold and the proceeds paid into the estate. One of the sons who was executor under the will acquired the interests of the other two. He bought the adjoining properties in which he installed machinery and which he used in connection with the business. The daughters petitioned for a citation to compel the sale of the property alleging that the son was a trustee of the business and that he was mingling it with his own, in violation of this trust and prayed for termination of the business and a sale of the property. *Held*, (1) the son was not a trustee, but a tenant; (2) the daughters had no interest in the business, but simply the right to require that when such son should cease to run the business he should pay to the estate the value of the property as it was at the death of the testatrix, and (3) the petition was properly dismissed.

Argued March 5, 1918. Appeal, No. 32, Jan. T., 1918, by Hattie M. Weber, and Mary A. Weber, from decree of O. C. Berks Co., Sept. T., 1911, No. 24, dismissing petition for a citation in Estate of Anna Weber, Deceased. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Petition for a citation to require an executor to account for profits of a decedent's business conducted by him. Before SCHAEFFER, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the petition. Hattie M Weber and Mary A. Weber appealed.

*Error assigned* was in dismissing the petition.

*Cyrus G. Derr*, with him *Walter B. Freed*, for appellant.

*Isaac Hiester*, with him *John B. Stevens*, for appellee.

OPINION BY MR. JUSTICE STEWART, June 11, 1918:

Anna Weber, the testatrix, a widow, at the time of her death was the owner of a lot of ground in the City of Reading on which was erected a building in which she conducted on her own behalf two distinct enterprises, one the manufacture of paper boxes, the other the manufacture of badges, she owning all the machinery employed in each. Inasmuch as the present controversy relates exclusively to the management, control and final disposition of this item of testatrix's property, it can be understood only as we here produce so much of the will of testatrix as expresses her direction in regard thereto. Testatrix died in 1905 leaving to survive her five sons and two daughters. In the first item of the will we find this provision, "They," the reference being to her three sons, Henry C., James A. and Daniel, as will later appear, "shall collect all the debts due the factory and with the proceeds and the factory's moneys in the banks pay all the debts of the factories, and should there not be sufficient money arising from the collections of the bills and the moneys in the banks, the deficiencies shall be assumed by my sons, Harry C. Weber, James A. Weber and Daniel Weber, and should there be a balance over after making the collections and the factories' moneys in the banks, and after paying the debts of the said factories, that balance shall be equally divided among my children." Why this provision that the three named of her five sons should assume any deficiency in the assets of the factories to meet the liabilities of the factories will later appear. In the next following item we find this direction, "Item, I direct that the factories shall be run as follows. The Upper Factory shall be in charge of my son, Harry C. Weber, and the Lower Factory shall be in charge of my sons, James A. Weber and Daniel Weber. The profits of said Factories shall be equally divided among the said three children, Harry C. Weber, James A. Weber and Daniel Weber, who shall pay a rental sum to my sons, Herman Weber and Walter Weber, each the

sum of twelve dollars per month, and to my daughter, Maud E. Weber, the sum of fifteen dollars per month, until she shall marry, thereupon the said payment to my daughter, Maud E., shall cease. However, if at any time the said Factories shall be idle for more than one month, then the above-mentioned rents shall not be paid during the time the Factories are idle. My sons, Harry C. Weber, James A. Weber and Daniel Weber, shall each receive fifteen dollars per week for their labor out of the profits of the Factories. I do hereby order and direct that the sum of fifteen dollars per week, as hereinbefore provided, shall be paid to my son, Daniel Weber, as long as he is connected with the factory or factories and not able to work in the said factory or factories on account of illness.

"I do hereby order and direct that my son, Harry C. Weber, shall have the sole management of the financial matters connected with the said factory or factories and the business thereof. All contracts to be approved of by him and all moneys to be received and deposited by him and all checks and other obligations to be signed by him only. In case of the death of my son, Harry C. Weber, then the surviving sons running the factory or factories shall decide amongst themselves who shall assume the duties of my deceased son, Harry C. Weber. If at any time my son, Harry C. Weber, shall desire to withdraw from the firm, then my sons, James A. Weber and Daniel Weber, shall have the first right to purchase the share of my son, Harry C. Weber, the amount to be determined by an honest appraisement of three disinterested persons.

"However, should any or either of my sons, Harry C. Weber, James A. Weber or Daniel Weber die, then from the date of such death the share of the profits of such deceased son or sons shall be paid unto his or their widow or widows, and if there be no such widow or widows surviving and there be children surviving, then such aforesaid share or shares of such deceased son or sons shall be paid unto his or their respective children, as the case

may be; the foregoing is subject to the proviso that the aforesaid factory or factories are being run by my said mentioned sons as aforesaid or by any or either of them surviving as aforesaid and to continue as long as the factory or factories are run by the survivor or survivors of them, and also should it happen that any or either of my said three sons be not connected with the running or business of the said factory or factories at the time of his death or their death, then the aforesaid bequest of the share or profits shall not apply to the widow or children of such deceased son or sons dying not connected as aforesaid.

"If at any time my three sons, Harry C. Weber, James A. Weber or Daniel Weber, or the survivor or survivors of them, decline to continue the manufacturing business, or my said three sons are deceased, it is my will that the factory or factories shall not be sold as long as any of my other sons wish to run the factory or factories, and if my sons, Harry C. Weber, James A. Weber and Daniel Weber, decline to run the factory or factories, and if Herman Weber and Walter Weber or either of them wish to run the factory or factories, they shall pay a monthly rental sum of twelve dollars per month to each of my said sons if living, or if dead, to their widows or children of such deceased son or sons as aforesaid, and to my daughter, Maud E. Weber, a rental sum of fifteen dollars per month in the manner and period of time as heretofore provided. Should neither of my said sons desire to run the said factory or factories, I do hereby direct my hereinafter named Executor to sell the said factory or factories at public or private sale for the best price obtainable, and I do hereby authorize and empower my hereinafter named Executor to sign, seal, execute and acknowledge all such deed or deeds of conveyance as may be requisite and necessary for the granting and assuring the same to the purchaser or purchasers thereof in fee simple, and the proceeds of said sale shall be equally divided among my children, Herman Weber, Walter

Weber, Harry C. Weber, James A. Weber, Daniel Weber, Hattie M. Moyer and Maud E. Weber, share and share alike, or their heirs, share and share alike."

The rest and residue of testatrix's estate she devised and bequeathed to her above named children, share and share alike.

Nothing in these several provisions relating to the factories gave rise to dispute or any expressed dissatisfaction. On the contrary, the disposition of the factories was acquiesced in, and the three sons appointed by the will to have them in charge and run them, accepted under the will, though under no requirement to do so, and entered into possession and control, thereby taking upon themselves the burden and duty of observing such conditions and regulations in connection therewith as directed by the will. One of the sons, Harry C., was made sole executor of the will; but it is to be kept in mind that he was charged with no duty as such executor in connection with the several factories so long as they were operated by any of the sons; it was for the sons to operate them in accordance with the directions of the will and no responsibility rested on Harry C. as executor in connection therewith. The firm, as testatrix speaks of the three sons thus associated, were to share equally in the profits and bear equally the indebtedness. There is not a suggestion in the will that testatrix's estate was to be liable for any loss or indebtedness, or to be otherwise interested in the enterprise. Harry C. later on acquired by purchase the shares or interests of his brothers, James A. and Daniel, who were associated with him in the business, with the result that the sole and exclusive management and control of the factories thereafter was in himself. Later on he purchased the shares of Walter and Maud, so that as the case then stood the only outstanding interests were those of Herman and Hattie Moyer, and of these Herman, now deceased and represented by his widow, was under the will to receive as rental twelve dollars per month and Hattie

fifteen dollars a month until her marriage. These were the parties in interest when the present proceeding was begun. By petition filed in 1916 by Hattie M. and Mary A., widow of Herman, it was represented to the court that (1), by the terms of the will the factories, machinery and business continued part of the estate of the testatrix; that when all the sons were unwilling to operate the same or had died, they might be sold and the proceeds divided, and that the taking possession of the factories, etc., constituted Harry a trustee; that (2), Harry, during his custody of the business and property, had tried to make the patronage and good will his own, to that end purchasing the adjoining building, connecting it with the estate's property, installing machinery therein which he called his own, adding other lines of business, blending the original business therewith so as to make the original business difficult or impossible of discrimination, keeping bank books and bank accounts in his individual name, declaring and advertising the business as entirely his own, and recently offering the real estate for sale without the business, and generally pursuing a line of conduct calculated to transfer the good will and patronage to himself with the intent that when the time arrives for sale there will be nothing to sell but the property and building; that (3), he is wasting and mismanaging the estate whose interests are likely to be prejudiced by his continuance in the trust, his interest being hostile, and that James having sold his interest and Daniel and Herman having died and Harry having ceased to operate the factories in accordance with the directions of the will, the latter should be sold as directed and the proceeds divided.

The petition prayed (1) that if sold Harry be restrained from making use of the patronage and good will to avoid irreparable injury to the petitioners; (2) that Harry be removed from the executorship and trusteeship; (3) for a decree that circumstances have arisen whereby under the terms of the will the property is to be

sold and proceeds divided; (4) for a decree of sale and an injunction restraining Harry from taking benefit of good will; and (5) that Harry be required to account for profits and damages.

To this petition Harry C., under rule, made answer, expressly denying every averment in the petition that charges him with a purpose in his management and control of the factories to prejudice the right and interest of the estate therein, if any such right or interest remains; he admits the main facts set out in the petition relating to the purchase by himself of an adjoining building wherein at his own cost and expense he has placed new and more improved machinery; he denies that he is at present, or has been at any time, a trustee of the factories or business therein conducted, but asserts that he holds the former as tenant under a fixed rental and is now the sole owner and proprietor of the business carried on, not denying his liability to account for the machinery that was in the factories, appraised at $1,275.00, when he first entered into possession, but insisting that he is the owner of the new machinery introduced at his own cost and expense, that he is the sole owner of the business, entitled to all the profits of the business, and that the will making it optional for him to continue the business requires him to account as executor for said factories only when he has ceased to exercise his option in connection therewith.

Certain testimony was taken which we have neither time nor space to review. Sufficient to say that it neither adds to nor detracts from the strength of either side as exhibited in petition and answer. Upon these alone the case might well have been decided. The learned judge of the Orphans' Court, in an opinion amply justifying his conclusion, held the case to be with the respondent and accordingly dismissed the petition. The assignments of error on the appeal are fourteen in number, the first of these presenting the real controversy, and except as this can be sustained the remaining assign-

ments may be passed without consideration, since they stand or fall with the first which reads as follows: "The court erred in not construing the will of Anna Weber in accordance with the contention of the exceptants, viz, that the testatrix intended that the factories and businesses thereof should be and remain part of her estate to be operated by her sons, Harry C., James A. and Daniel, who, while operating the same, were to receive salaries and the net profits, and when none of her sons should be willing to operate the said factories and businesses in accordance with the terms of the will, the same should be sold and the proceeds of the sale equally divided among her children." Unquestionably the whole case turns on the construction to be given the will of the testatrix. A manifest objection to the construction contended for by appellants is not only that it supplies too much in addition to what is expressed in the will, but that it gives to what is expressed a meaning much out of the ordinary, and that without apparent reason. The word "business" as here introduced and so much relied upon by appellants, while occurring twice in the will, is not there used in such connection as to show any intention thereby to indicate the extent of the gift to the three sons. The word is an uncertain and equivocal expression; it may mean property, or it may mean simply good will, depending on the connection in which it is used. As used by the testatrix in her will it is without significance in the present controversy, since in the connection it is used it can have no reference to the subject of the gift to the three sons. Reduced to simplest terms, what is given by the will to the three sons was an option to lease upon certain expressed and definite terms, including a fixed rental, payable not to the legal representatives of testatrix, but to certain of her children, the several factories which she was operating at the time of her death and as they then stood, that is to say, with their then present equipment. By their acceptance of the option a contract resulted and the three sons thereby

acquired possession and control of the building and the machinery therein, nothing here involved being reserved; the testatrix's entire interest passed to the lessees who alone became responsible for all debts incurred and entitled to all profits earned.    What conceivable property interest remained in the testatrix or her estate in connection with the conduct of the factories?    Without any right to share in the profits, and without any liability for indebtedness thereafter incurred, the only right not parted with by her was the right upon the determination of the lease, however brought about, to a surrender of the estate and property leased.    If this be the proper construction of the will, and as to this we are left in no doubt, then it must follow that so long as the sons, or any of them, are rightfully in possession of the premises, observing the terms of the contract, that is, performing those things required by the contract and abstaining from those things forbidden, they are entitled to be free from disturbance by any one.    The contention of appellants is that they, being entitled to share in the proceeds of the sale of the property when that period arrives, and as a distinct element of value that will enter into the price obtained will be what they choose to denominate the "business," as distinguished from the real estate and the machinery that passed under the gift of the three sons, they have such interest as gives them standing now to complain.    If the premises be admitted, perhaps the conclusion could not well be denied; but, as we have said, we find nothing in the will that even suggests a reservation of any kind in the gift to the sons, whether of business, whatever that may mean, or anything else. It follows that when the lease shall terminate the demands of the estate will be fully met by a surrender of the real estate and such machinery as the sons derived under the will, together, perhaps, with what, if any, has meanwhile been substituted for such as was outworn and rendered useless.    It follows that appellants are without standing to complain; the lease is still in force and

we discover nothing in the manner in which it is being conducted that is in violation of any of its terms. The appeal is dismissed and the decree is affirmed.