In the Matter of the Application of JOHN C. O. RITZENTHALER, to Obtain a Construction of the Last Will and Testament of ADOLF FRICKE, Deceased.

Surrogate's Court, Westchester County, January, 1924.

**Wills — construction — bequest of business with all assets — when bonds deposited in bank by testator deemed to form no part of assets of business — business manager, in testator's absence, purchased bonds with funds of business and deposited them together with other funds in bank — when bonds, time deposit and sum in checking account deemed to pass to legatee of business under codicil — interpretation of word " kontokorrent "— when bequest deemed not to be cut down.**

An unmarried testator by his will executed in this country gave the linen import business in which he was engaged in the city of New York to a cousin, but she having predeceased him, he while on a visit in Germany and a few days prior to November 27, 1916, when he died, executed a codicil to his will in the German language, which translated into English provided as follows: " I have bequeathed this my linen import business with all assets and liabilities and with the firm name of my business to my business manager, John C. O. Ritzenthaler of New York.    To this business belongs also my credit balance from the current account transactions with the German American National Bank in New York.    This credit balance shall go, therefore, with the business as a legacy to said John C. O. Ritzenthaler."    Apart from the linen import business the testator at the time of his death was the owner of real and personal property, both in this country and in Germany, of the value of $100,000.    In a proceeding for the construction of the will, it appeared that at the time of testator's death the business carried on under his name had a checking account in said German American bank, now the Continental Bank of New York city, in which there was a balance of about $12,000.    Some months before leaving for Germany the testator had deposited in said bank for safekeeping bonds of the par value of $7,000, which were paid for by his personal checks, from the said business checking account, and the stubs of said checks were marked " private."    Shortly before leaving for Germany the testator hypothecated these bonds with said bank as collateral to a loan which was subsequently repaid from the avails of the business by his direction.    *Held,* that said bonds and two bonds substituted for two that were redeemed, formed no part of the assets of the linen import business and did not pass by the codicil to the will.

During the testator's absence in Germany his business manager had purchased, with the funds of the business, bonds amounting to $5,000 par value prior to the

death of testator, and had deposited them with the bank for safekeeping, and had also deposited $5,000 in said bank, at interest, represented by a receipt dated July 14, 1915. *Held*, that said bonds and the said time deposit passed to the manager under the codicil as a part of the linen import business; that the sum in the checking account at the death of testator was also an asset of said business and passed to the manager under the codicil and also under the terms of the clause thereof which gave him the " current account," the proper translation into English of the German word " kontokorrent."

A bequest in the codicil to said business manager of testator of all merchandise stored for him for his account at designated places was not cut down by the words: " I figure the value of the above business at approximately M. 80,000, Eighty thousand Marks," which are of doubtful meaning.

PROCEEDINGS to construe a will.

*Geller, Rolston & Blanc (C. Alexander Capron* and *Stephen C. Huestis,* of counsel), for petitioner and legatee.

*Duer & Taylor,* for Alien Property Custodian.

*Isidore Neustadter,* for Max P. Weil, a legatee.

*Schnitzler, Thorn & Dayton,* for Gustave Fricke and others, legatees.

SLATER, S.  The matter in question relates to the codicil which was executed in Germany in the German language on November 24, 1916, a few days prior to the decease of the testator.  The will is dated October 13, 1911, and was executed in this country. Extrinsic evidence was taken of the surrounding facts and circumstances to aid in determining the intention of the testator.  *Bauman* v. *Steingester*, 213 N. Y. 328; *Matter of Lummis*, 101 Misc. Rep. 258.

The testator, a citizen of Germany, was domiciled in this country for twenty years, coming to this country at the age of forty-three years.  He engaged in the linen import business in the city of New York, and his business manager, John C. O. Ritzenthaler, a citizen of this country, is the legatee of the business.  His nephews and nieces and Max Weil are residuary legatees.  The testator visited Germany in July, 1914, and died there November 27, 1916.  While there he had correspondence with the manager, John C. O. Ritzenthaler, and such as affected the subject-matter was offered and received in evidence.  He died seized of real estate and personal property, in this country and in Germany, other than the linen import business, of the value of $100,000.  He was unmarried.  Mr. Ritzenthaler, the legatee of the business, as a young man, entered the testator's employ, and was advanced to the position of manager of the business.  During the testator's absence in Europe in 1915 remittances were made to him from the profits of the business aggregating $29,590.64.

The will gives the linen import business to a cousin, Mrs. Leopoldina Weil, but she having predeceased him, the codicil as translated into English provided as follows:

" I have bequeathed this my linen import business with all assets and liabilities and with the firm name of my business to my business manager, John C. O. Ritzenthaler of New York.

" To this business belongs also my credit balance from the current account transactions with the German American National Bank in New York. This credit balance shall go, therefore, with the business as a legacy to said John C. O. Ritzenthaler. I further bequeath to the said John C. O. Ritzenthaler all merchandise which is stored for me in my account at the following places."

Description of merchandise follows: " The value of the above business I can state to be about 80,000 marks."

The controversy arises over the intention of the testator regarding said bequest to Mr. Ritzenthaler. At the time of his death, November 27, 1916, the business carried on under the name of Adolf Fricke had a checking account in the German American Bank, now the Continental Bank of New York city, in which there was a balance of $12,002.48; the testator had deposited for safe-keeping months prior to his departure for Germany $7,000 par value of bonds; during his absence in Germany Mr. Ritzenthaler had purchased with the funds of the business bonds amounting to $5,000 par value under dates of February 16, 1916, and February 26, 1916, likewise deposited by him with the bank for safekeeping; and he had deposited $5,000 in the said bank on time deposit at two and one-half per cent interest represented by a receipt dated July 14, 1915. The petitioner contends that he is entitled as legatee to all of the above-mentioned bonds, the time deposit, and the balance in the checking account, upon two grounds: *First*, that they are all inclusive in the terms of the words of gift of the business " with all assets and liabilities;" *second*, because of the words of gift that " to the business belongs my credit balance from the current account (kontokorrent) transactions with the German American National Bank in New York."

The respondents claim that only the business, the trade name and the checking account pass to the legatee and that all the deposited bonds and the time deposit belong to the residuary legatees.

The business had not been incorporated, nor did a partnership exist. It was the personal property of the testator. The evidence and the exhibits indicate that the testator had from time to time segregated the profits of the business for investment and for payment of checks, which he had denominated as " private." So, I

think we must look for the solution of the questions submitted to the attitude of the owner himself. With this thought the attorney for the petitioner agrees, for in his brief he says: " It is, therefore, only necessary to determine what part of this property the testator regarded as assets of his business and, therefore, intended to bequeath to Mr. Ritzenthaler." The profit of the business was his property and he had a right to direct whether it should go elsewhere, or remain in the business. The $7,000 par value of bonds still on safekeeping deposit with said bank were purchased by the testator himself in January, 1912, and on August 12, 1913, and paid for by his personal checks from the business checking account. The check stubs indicating payment therefor are marked " private." The testator chose to dispossess it of its business character and make it a part of his private affairs. The business was prosperous and the rights of creditors did not have to be considered.

Shortly before leaving for Germany, on June 24, 1914, he hypothecated this particular group of bonds with the German National Bank of New York as collateral security for a loan of $6,500. Subsequently, on December 23, 1914, and June 23, 1915, the manager, Mr. Ritzenthaler, repaid the loan from the avails of the business by direction of the testator.

Two bonds were subsequently redeemed and the manager by direction of the testator replaced them by the purchase of other bonds. The notation on the stub of the check used to purchase one of the bonds, in the manager's handwriting, was in these words: " This bond is being bought out of private funds deposited in business account by bank."

The correspondence between the manager and the testator indicate that both the testator and the manager considered this group of bonds as his private property and not a part of the business.

It is my opinion that the bonds amounting to the par value of $7,000 purchased by the testator prior to his departure for Germany and the two bonds substituted for the redeemed bonds of this block form no part of the assets of the linen import business. The testator had segregated these bonds himself and took this asset out of the business. In case of insolvency his whole estate would become liable, but while solvent, in his own way he had separated these properties from his business. And his thought and action assist very materially in deciding the question presented.

While the legatee is claiming the $7,000 bonds as part of the business, let us see how he characterized this block of bonds prior to the death of the testator.

The letters of the manager destroy his own contention regarding this lot of bonds. Under date of June 23, 1915, in repaying the German American Bank the balance of the loan made to Mr. Fricke, the manager said: " Enclosed please find check for $2,556.40, in cancellation of balance of *private loan* to Mr. Adolf Fricke as per statement below."

The same day he wrote the testator and said: " In compliance with your wish I have paid today the German American Bank * * *. The securities remain in possession of the Bank until your return as I cannot collect them myself * * *."

Under date of November 5, 1915, the manager wrote to Mr. Fricke regarding certain excess moneys of the business and said: " Included in the $17,864.19 [meaning the money in the checking account] are $2,000 which the Bank has received for a bond 3½ Pennsylvania, which matured recently. Mr. Frederichs had this amount, as there is not a personal account, transferred to the business account. However, he stated that I could not dispose of this sum as I have no power of attorney concerning your private matters. [The bonds herein referred to were two of the bonds purchased by Mr. Fricke before his departure for Germany and made up the $7,000 lot.] " Words bracketed by the court.

The testator under date of November 29, 1915, after referring to the bonds credited to " my business account " gave this direction: " I shall ask you to kindly buy two good bonds instead and leave the same with the German American Bank for safekeeping against their receipt."

The manager on December 3, 1915, writing to the testator, referred to this matter in these words: " The bank has deposited the matured coupons in our business account — amount $290. Regarding this amount and regarding the $2,000 already mentioned to you — the proceeds of Pennsylvania bonds — I have no right to dispose and I request you not to overlook to give your instructions regarding this capital now remaining without bearing interest. Furthermore, I ask you for a statement of the funds which are over there and of the withdrawals therefrom which must be credited to your private account."

On March 3, 1916, the German American Bank, then known as the Continental Bank of New York, wrote the testator that " We hold for your account $12,000 in certain named bonds. [This item includes the $7,000 in bonds purchased by the testator before going to Germany and $5,000 in bonds later purchased by the manager.] Do you authorize us to deliver all or any of the above securities to your representative Mr. Ritzenthaler in case he should require them in the course of your business? " Words bracketed

by the court.   Answering, the testator said:   " I authorize you to deliver to my representative, Mr. John C. O. Ritzenthaler *for the amount of $5,000 bonds* which you hold for my account in case he should require them in the course of my business."

In this communication it is clear that the testator treated the $7,000 bonds as his private matter.

The manager, on April 21, 1916, wrote the testator and inclosed check " which I request you to credit in the following manner:

" $2,500.— withdrawn from *our account* (*of the business*)
  500.— this amount is the one which I already since
    6/29/14 *has been carried in our books as
    your private property.*
 20.75 — for postal money order, Ruckstuhl (see
    letter # 56.)
 290.— *profits of your private bonds:*
    Penna R.R. $35.— No. Pac. $60.—
    No. Pac.  60.— B. & O.  45.—
    B. & O.   45.— B. & O.  45.– "

The profits from the corpus characterized as " your private bonds " were of the lot purchased by the testator or substituted by the manager for bonds redeemed.

As remittances were made monthly to the testator from the checking account it cannot be well stated that items of interest upon the $7,000 bonds were never transmitted.   The coupons on the bonds in the $7,000 safekeeping account, viz., 2,000 B. & O. conv. $4\frac{1}{2}\%$, due 1933; 3,000 C. B. & Q. joint 4%, due 1921; 1,000 N. P. p. l. 4%, due 1997; 1,000 Brooklyn U. El. first 5%, due 1950, cut and deposited after the death of the testator belong to the residuary legatees.   The amount should be indicated in the final accounting proceeding.

We will next consider the contention regarding the $5,000 time deposit and the purchase by the manager of the lot of $5,000 bonds, viz.: 1000 N. P. p. l. 4%, due 1997; 2000 U. P. first 4%, due 1947; 2000 U. T. & S. T. 4%, due 1995, and deposited for safekeeping, as they belong to one or the other of the parties hereto upon identical reasoning.

The manager wrote the testator on April 19, 1915, saying: " The bank deposit is $11,057 today.   If I do not hear from you favorably upon my inquiry whether to send larger sums to Germany and I receive no other decision, I shall invest the $5,000 for the duration of three months with the Trust Company against interest, rather than have so much money lying idle."

Under date of May 12, 1915, the manager writes: " The bank

account today is $15,016. In the course of the next few days, I shall deposit $5,000 on time deposit with the Title Guarantee and Trust Company." This particular time deposit was made, and later was taken up and remitted to the testator in Germany and is not of the subject-matter involved in this proceeding.

The testator writing to the manager under date of May 31, 1915, said: " *Under no circumstances leave large amounts on deposit at the Bank without interest, but try to use the excess as well as possible.*" (Italicized by the court.)

The testator again wrote to the manager under date of June 21, 1915, and asked him " to remit all money that could be spared and reduce the bank account to the extent that the current obligations be settled promptly." The manager wrote the testator under date of July 21, 1915, and said: " Today I deposited with the German American Bank $5,000 on time deposit for three months at the rate of $2\frac{1}{2}\%$ per annum." On July 23, 1915, the manager wrote to the testator and said: " As I informed you in my last letter, I deposited $5,000 with our Bank on the 14th of the month for the duration of three months against a certificate of deposit." Under date of March 3, 1916, the manager wrote to the testator and said: " I deposited with the Bank today $5,000 in bonds, that is, $2,000 Union Pacific — 4%, $2,000 Atchison and Santa Fe, and $1,000 Northern Pacific — 4%. *As this sum represents business capital*, I have informed Mr. Frederichs that I retained the right of disposal. The gentleman may write you about it." (Italicized by the court.) The testator replied under date of March 27, 1916, and said: " I have received your letter of the 3rd instant. I shall write to the German American Bank today that *you have the power of disposal over those bonds bought on March 3rd amounting to $5,000.*" (Italicized by the court.) The testator wrote to the bank and authorized it " to deliver to my representative Mr. John C. O. Ritzenthaler for the account of $5,000 bonds which you hold for my account in case he should require them in the course of my business."

The manager under date of April 2, 1916, writing to the bank said: " Our Mr. Fricke advises that he has communicated with you and informed you that I have the power of disposing as I see fit the bonds *purchased recently*, and at present in your safekeeping." (Italicized by the court.)

The court finds no direction from the testator to the manager authorizing him to segregate from the avails of the business the investment made by the manager. He never chose to disassociate it from his business. In fact, the correspondence as hereinbefore

28

indicated shows clearly that the purchase of $5,000 in bonds by the manager in February, 1916, was considered by him as well as by Mr. Fricke as assets of the business. The letters hereinbefore referred to under date of May 31, 1915, to the manager and of March 27, 1916, to the bank authorizing it to deliver this lot of bonds to the manager in case he should require it " in the course of my business " is an indication that the testator had in mind that it was one of the assets of the business.

It cannot be well stated that the letters by the manager to the decedent are self-serving documents because they were written at a time when the manager did not know that he was to become the owner of the business.

It is my conclusion that the time deposit of $5,000 and the $5,000 par value of bonds both taken from the avails of the business, were never separated from the business to become a part of the private fortune of the testator, and at testator's death were assets of the business and passed under his will to John C. O. Ritzenthaler. The phrase " all assets " is broad and inclusive language and includes the stock, the name, the checking account, the $5,000 time deposit from the profits of the business, and the $5,000 par value of bonds purchased by the manager. In Bouvier's Law Dictionary we find this definition of the term " All the stock in trade, cash, and all available property belonging to a merchant company." None of these had been segregated to the private funds of the testator by the direction of the testator. The testator had no partners, and the business and all its assets were entirely his. He had the right to withdraw what and when he pleased from the business. That both testator and the petitioner recognized a sharp distinction between the testator's assets as long as they were kept in the business and between their status after they were separated and segregated from the business, when they were regarded as and became the " private " property of the testator, is evident from the letters, as well as from the use of the word " private."

The petitioner further contends that the phrase " kontokorrent " account as used in the German codicil is a technical word having a well-established meaning in Germany; that its meaning includes all items, accounts and business relations existing between the depositor and his bank, with all items merged in a credit and debit balance, and, therefore, the property and cash belonging to the testator in the hands of the Continental Bank passes to the petitioner.

In order that the court may be informed of the English meaning of the technical term, evidence was given by German lawyers. *Lindsay* v. *Wilson*, 103 Md. 254; *Houghton* v. *Brantingham*, 86

Conn. 630.    German words are to be interpreted according to our law, and the technical meaning and use of the words in German are to be regarded in order that the instrument might be correctly translated into English.    *Caulfield* v. *Sullivan*, 85 N. Y. 153, 161; 40 Cyc. 1384.    I will quote from the German codicil as translated by the witnesses, and agreed by counsel as an accurate translation:

" Zu diesem Geschäfte gehoert auch mein Guthaben aus dem Kontokorrentverkehr mit der German-Amerikan-National bank in New York."

" Dieses Guthaben soll also mit dem Geschäfte auch dem John C. O. Ritzenthaler vermächtnisweiss zufallen."

Translation:

" To this business belongs also my credit balance from the current account transactions with the German American National Bank in New York."

" This credit balance, therefore, shall go with the business to John C. O. Ritzenthaler, as a legacy."

It is incumbent upon the court to determine on the evidence what is the English version of the German codicil.    *Matter of Mayer's Will*, 144 N. Y. Supp. 438.    The German word " kontokorrent " is in dispute.    The English meaning of this German technical term the expert lawyers did not agree upon.    They did agree that in Germany the term meant relationship existing between the bank and its customer to the end that a person's property in the bank, *i. e.*, checking account, time deposit, and bonds left for safekeeping, and any other business affair existing between customer and bank were a common fund for the purpose of indemnifying the bank in case of overdraft, or loss arising from the business transaction.    One expert, however, said the relationship could only be brought into being by an express agreement; the customer signing terms under which the business shall be transacted and that all named items shall be subject to the lien of the bank for any sums due to it in the " kontokorrent."    Another expert testified the relationship could be brought into being either through express agreement, or impliedly, pursuant to the German law.    In this country we have no such term, nor does such usual banking relationship exist.    Such an agreement may be entered into, but it is not common in the banking life of the country.    It has not become a custom with a word or phrase to classify it.    Un ess entered into by special agreement the bank in this country has no right to apply securities or time deposits for payment of  an overdraft in a checking account.    No such special relationship existed in the instant case between the testator and the bank so as to have even the semblance of a " kontokorrent " relationship.

The draftsman of the codicil was a German notary. The German meaning or effect cannot be given to the word "kontokorrent," because no "kontokorrent" relationship existed between the American bank and the testator and the German draftsman was writing about a relationship that did not exist. This term has no meaning in this country. The word in its German meaning cannot be made "consistent and significant." Nor can the use of the term create the relationship. To paraphrase the decision in *Thelluson* v. *Rendelsham*, 7 H. L. Cas. 429, referred to by Justice Martin in *Hewitt* v. *Cooper Union*, N. Y. L. J. Jan. 21, 1924, the court will say: "We are here to construe an American will, of real property in America, according to American interpretation."

The use of technical terms of the law of a foreign country in the will of a testator having an American domicile will not of itself be regarded as an indication of intention that the will is to be construed according to the foreign law. 1 Jarman Wills, 4, note.

After an examination of all the evidence, I am satisfied that the German word "kontokorrent" should be translated by the English words "current account" and only this English version given to it. In the United States a current account is an active checking account, through which are constantly passing both debit and credit items. That is the literal meaning of the words and it is the usual and ordinary meaning which should be accepted by the court. A current account is not a dead account, such as the safekeeping account in which the bonds were placed. Thus, the clause of the codicil, containing this technical term interpreted as the current account, and the credit balance — the Guthaben — "all I have to the good" — in the checking account of the business, passes to the manager legatee, "mein Guthaben aus dem Kontokorrent."

It is the opinion of the court that the lot of $5,000 par value of bonds purchased by the manager in February, 1916, and deposited with the bank for safekeeping, and the time deposit of $5,000 pass to the manager legatee as a part of the linen import business of the testator under the first part of the paragraph of gift; that the sum in the checking account at the death of the testator is also an asset of the business, and passes to the manager legatee under the same part of the same paragraph, and also under the terms of the clause which gave the manager the "current account."

After bequeathing his business to Mr. Ritzenthaler the testator bequeathed to him certain merchandise stored in Germany. Following this bequest he stated: "I figure the value of the above business at approximately M. 80,000, Eighty thousand Marks." What significance is to be attached to this expression in the codicil? The

general rule applies that a gift of property cannot be cut down by subsequent words appearing in the will of doubtful meaning. *Banzer* v. *Banzer*, 156 N. Y. 429, 435; *Tillman* v. *Ogren*, 227 id. 495.

Submit decree on notice to all attorneys appearing.

Decreed accordingly.