[Civ. No. 7371. First Appellate District, Division One.—July 8, 1930.]

In the Matter of the Estate of JOHN HENRY FRIEDRICHS, Deceased. ELISABETHA K. FRIEDRICHS, Appellant, v. HENRY B. FRIEDRICHS, Respondent.

Charles R. Holton and R. C. Young for Appellant.

Brobeck, Phleger & Harrison for Respondent.

WARD, J., *pro tem.*—This is an appeal by the residuary legatee, Elisabetha K. Friedrichs, the widow of the deceased, John Henry Friedrichs, from certain portions of a decree of partial distribution in favor of a specific legatee, the respondent Henry B. Friedrichs, stepson of the deceased. The provisions of the decedent's will which are involved in the present controversy read as follows: "Second,—To my said stepson, Henry B. Friedrichs, I will, devise and bequeath a life estate in and to an undivided one-half interest in the business now owned and conducted by me in San Francisco, California, with remainder over to his said daughter, Marie W. Friedrichs; that is to say, after my death, and during his lifetime, said Henry B. Friedrichs

is to own an undivided one-half interest in said business, and, upon his death, said undivided one-half interest in said business is to go to and become the property of his said daughter, Marie W. Friedrichs; Third,—To my wife, Elisabetha K. Friedrichs, I will, devise and bequeath all the rest, residue and remainder of my estate of whatsoever character and wheresoever situate, of which I may die seized or possessed, including the other undivided one-half interest in my said business, and also all real and personal property; all money in bank, and all stocks, bonds, notes, mortgages, trust deeds, and other evidences of indebtedness.'' The estate consisted of a factory site, promissory notes, Liberty bonds, cash on hand in the factory, money in banks, machinery, supplies, stock and accounts receivable. Both appellant and respondent concede that the devise and bequest of the ''business'' includes all of the machinery, tools, stock and cash on hand in the factory. The court found ''that at the time of the death of said decedent and for many years prior thereto, he had owned and conducted a furniture business in San Francisco, and that the terms 'the business now owned and conducted by me in San Francisco, California,' were used by said decedent in his last will as referring to all of the property used by him in the operation of said business, including the real property upon which such business was conducted, the personal property located in the buildings thereon, the stock on hand, accounts receivable, cash on hand, and the commercial account, all used in connection with said business,'' and thereupon decreed to the respondent in addition to the items conceded, the real property, accounts receivable, and money in the Bank of California.

The first question to determine is the meaning of the word ''business'' as used in the second paragraph of the will. ''The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained'' (sec. 1324, Civ. Code). Business is not a technical word and has no definite, popular or legal meaning. If dictionaries are searched the definitions are found to be vague and shifting, such as ''employment,'' ''work,'' ''buying and selling,'' and among other definitions ''a commercial or industrial enterprise'' (*In re Weber's Estate,* 261 Pa.

St. 561 [104 Atl. 735]). Courts may properly give a wider significance to a particular word than is given by dictionary definition. In the *Estate of Silva*, 169 Cal. 119 [145 Pac. 1015, 1016], the testator left a will giving "all the business I got" to his wife and the court held "the argument of the appellants is that the word 'business' cannot by any reasonable construction be held to refer to property. The context shows that it was used to describe whatever property the decedent at that time possessed. Taking the document as a whole, it sufficiently indicates the purpose of the testator to devise and bequeath to his wife all the property that he possessed and to require her to pay all his debts." In *Coyle* v. *Donaldson*, 91 N. J. Eq. 138 [108 Atl. 308, 309], testator bequeathed "the coal business now owned by me" and the court held "that the coal business was to pass as it was then owned as a whole", which included the leasehold interest in the land, cash in bank and bills receivable. (*In re Fricke's Will*, 122 Misc. Rep. 427 [202 N. Y. Supp. 906]; *In re Lowe*, 206 N. Y. 671 [99 N. E. 722].) "It is also equally well settled that the unqualified gift of the rents, issues and profits of a fund or property, real or personal, amounts to a gift of the fund or property itself . . . it is hardly thought that she intended to segregate realty from personalty" (*Estate of Franck*, 190 Cal. 32 [210 Pac. 417, 418]). If the testator owned the business of a gravel supply company and there was included therein a rock quarry, surely under such terms as we find in this will the real property would be a necessary part of the business; so, also, mining utensils without the mine would be of little value. "No doubt cases can be conceived where the transfer of the property would, from its very nature, be a transfer of the business in which it was employed" (*Shaw* v. *Hollister Land & Imp. Co.*, 166 Cal. 257 [135 Pac. 965, 966]). We likewise can conceive many instances wherein the transfer of stock or machinery would be of small value without the real property to which it was attached. In other words, real property may be in certain cases part of a "business" just as "money" under particular circumstances may include personal and real property (*Estate of Miller*, 48 Cal. 165 [22 Am. Rep. 422]).

Taking into view all the circumstances under which a will was made, courts should adopt an interpretation which confers upon each devisee and legatee a substantial benefit

rather than one which would pass little or nothing if such interpretation is in consonance with the intention of the testator.

 In this case the evidence shows that the decedent started business in San Francisco in the early '70's; that in 1886, when fourteen years of age, the respondent started to work for his stepfather; that the business grew, and during the last twenty-seven years, prior to decedent's death, the business was carried on in the same location, the decedent adding on to the buildings as business needs demanded. This furniture business was conducted in the name of H. Friedrichs. The respondent had full charge of the business and of keeping the books of the decedent and during the last six years the decedent left the whole management of the furniture business to respondent. From time to time respondent made written reports of the condition of the business, explaining the various items. There were two ledgers kept—one a factory ledger and the other a private ledger. In discussing accounts with decedent, respondent referred to various items as having been taken from either the factory or the private ledger. In the factory ledger were kept the accounts of "H. Friedrichs" and in the private ledger the personal accounts. Money was deposited in various banks of San Francisco, but the money in the Bank of California was used for commercial purposes directly connected with the business of "H. Friedrichs." The decedent and respondent in discussing private or business affairs spoke in the German language and in referring to the affairs of "H. Friedrichs" the word "geschaeft" was used, the English meaning of which is "business.' Respondent made regular reports as to the assets of the business and the condition of the savings account. An income tax return was made which included the real estate upon which the factory was located, the factory buildings, machinery, merchandise, prepaid insurance items, the sprinkler system, the outstanding money, book accounts, the cash in the office and the cash in the Bank of California.

The decedent was married twice. The first wife was the mother of respondent. Marie W. Friedrichs, who occupies the position in this matter of remainderman, is the daughter of the respondent. From the above a fair inference may be drawn that the factory land, buildings, the cash in the

commercial account (Bank of California), and the accounts receivable were part of the business conducted in the name of "H. Friedrichs," in addition to the cash on hand at the factory, the boilers, tools, etc., and that decedent considered these items as "business" assets not held by him in his personal or private capacity. We are strengthened in this conclusion by the fact that the "business" affairs had been segregated from the personal assets; that the business was conducted under the name of "H. Friedrichs" and not under the name of John Henry Friedrichs; that in many other matters respondent used the name of John Henry Friedrichs and J. H. Friedrichs, and that bills for accounts receivable were sent out under the name of "H. Friedrichs", and with the approval of the decedent on income tax returns in which the real estate, factory buildings, machinery, merchandise, book accounts, cash in office and commercial account were listed as "business investments." To buy or lease any property and install machinery, etc., would only mean the bequeathing of the stock on hand and the money of "H. Friedrichs." The respondent had conducted the business for many years. If the real estate and factory were not kept intact, what would be left for Marie W. Friedrichs, who occupies the position of remainderman? Respondent is the son of the deceased's first wife. The money which was originally invested in this business had been loaned by respondent's aunt to decedent. Up to the time of deceased's last marriage respondent was a part of testator's household and even thereafter there was manifested that affection usually found between father and son. We think that the trial court was justified in concluding that the testator intended that respondent who served him so loyally for over forty years should enjoy one-half the income of the business as it was then conducted and that upon respondent's death such interest should go to Marie W. Friedrichs. The cases cited by counsel for appellant, with the exception of Shaw v. Hollister Land & Imp. Co., supra, are not relevant to the interpretation of the word "business," but deal with other words, such as "heir," "child," "children," etc.

█ Appellant contends that the third clause of the will is controlling and that such bequest means that the real property, money in bank and other evidences of indebtedness takes with it the real estate, the commercial account and the

accounts receivable of the business. Having placed the above construction upon the second clause we find that all that the residuary clause indicates is that the testator intended that if there should be property of any kind which had not been disposed of and which was not part of the "business" it should go to the appellant.

The trial court found the only rational inference to be drawn from the extrinsic facts, so far as the word "business" was used in this particular will, and the findings and decree should be upheld.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 7, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1930.